```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

------------------------------------X

EDDY O. CISNEROS and DANIEL J.
GARZA, on behalf of themselves
and other similarly situated        **MEMORANDUM AND ORDER**
individuals,

                                        23-CV-1409 (KAM)(VMS)

            *Plaintiffs*,

   - against -

BORENSTEIN CATERERS, INC.
and GILAD HACHMON[1],

           *Defendants*.

------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

     Eddy Cisneros ("Cisneros") and Daniel Garza ("Garza," together, the "Plaintiffs") brought this action against their former employer, Borenstein Caterers, Inc. ("Borenstein") and Gilad Hachmon ("Hachmon"), Borenstein's chief executive officer, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., ("FLSA"), the New York Labor Law ("NYLL"), and 12 New York Codes, Rules and Regulations ("NYCRR") § 142-2.2. (*See* ECF No. 1, Compl.) The Parties now seek approval of their Proposed Settlement Agreement ("PSA"). (See ECF No. 25, Letter from Defendants' Counsel to Court ("*Cheeks* Letter"); ECF No. 25-1, Cisneros

---

[1] Plaintiffs appear to have sued Defendant Hachmon using a misnomer ("Hochman"), as the *Cheeks* letter and Settlement Agreement both clarify that the individual Defendant's name is Gilad *Hachmon.* (*See Cheeks* Letter at 1.) The Court will use the corrected name (Hachmon) and amends the caption accordingly.

Settlement Agreement; ECF No. 25-2, Garza Settlement Agreement (both agreements together referred to as the "Proposed Settlement Agreement" or "PSA").)  For the reasons that follow, the Parties' application is denied without prejudice to being renewed upon the submission of additional information regarding the range of recovery and billing records in support of the attorney's fee request.

## BACKGROUND

Borenstein Caterers, Inc., is a food catering business that Defendant Hachmon has operated "for many years."  (Compl. ¶ 80.) Plaintiffs have both worked for Borenstein for a lengthy period of time – since May 1986 in the case of Plaintiff Garza, who is a bakery supervisor, and since August 2000 in the case of Plaintiff Cisneros, who is an Executive Sous Chef.  (*Id.* ¶ 81.)  Plaintiffs were both still employed by Borenstein as of the date the Complaint was filed – February 22, 2023.  (*Id.*)  Plaintiffs allege that they "would often work in excess of forty (40 hours per week" but were not paid "time and a half wages for the hours they worked that exceeded" 40 hours per week.  (*Id.* ¶¶ 83-84.)  Plaintiffs further allege that they frequently worked "in excess of ten (10) hours per day without receiving the premium pay" (also known as "spread-of-hours" pay) required by the NYLL.  (*Id.* ¶ 85.)  According to the complaint, Plaintiffs would "often work as many as 12 hours a day and 50 to 75 hours a week without receiving overtime pay."

2

(*Id.* ¶ 91.)

Plaintiffs also allege that Defendants violated various provisions of the FLSA, NYLL, and NYCRR by failing to provide wage statements that conformed to legal requirements, and by failing to maintain appropriate payroll and employment records for their workers. (*See id.* ¶¶ 101-10.) Plaintiff seeks to recover unpaid overtime pay, unpaid spread-of-hours pay, attorney's fees and costs, liquidated damages, and interest. (Id. ¶ 1.) Plaintiffs purported to bring their claims individually and on behalf of a class of similarly situated hourly employees who are or were employed by Defendants in the last three years ("FSLA Collective Class") or six years ("New York Class") who were not paid overtime compensation for overtime work. (*Id.* ¶¶ 3-4.)

After the Plaintiffs filed the instant case on February 22, 2023, the Defendants initially appeared on September 14, 2023, solely to request a pre-motion conference in anticipation of filing a motion to dismiss the complaint due to Plaintiffs' failure to properly serve the Defendants within 90 days, as required by Fed. R. Civ. P. 4(m). (*See* ECF No. 9, Motion for Pre-Motion Conference.) The Court ordered Plaintiffs to serve Defendants with an updated summons no later than October 13, 2023, and the Plaintiffs complied and effectuated proper service. (*See* ECF No. 16.) Defendants thereafter appeared and answered the Complaint on November 1, 2023, *see* ECF No. 18, Answer), and the case was

3

subsequently referred to mediation by Magistrate Judge Scanlon on April 5, 2024, (Docket Order dated April 5, 2024). The parties reported that they were able to reach a settlement in principle at the mediation in a letter dated June 5, 2024. (ECF No. 24.) Thereafter, the parties submitted the pending motion to approve the PSA on June 14, 2024. (*See Cheeks* Letter.)

## LEGAL STANDARD

The Federal Rules of Civil Procedure afford litigants wide latitude in settling their disputes. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii) (noting that "the plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared"). An exception to this rule exists for stipulated dismissals of FLSA actions. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Parties may not stipulate to dismiss an FLSA action without submitting the proposed settlement to the district court for review and approval. *Id.*

District courts in this circuit frequently look to the factors outlined in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), to determine the reasonableness of a proposed settlement. *See, e.g., Li Rong Gao v. Perfect Team Corp.*, 249 F. Supp. 3d 636, 638 (E.D.N.Y. 2017); *Cortes v. New Creators, Inc.*, No. 15-CV-5680 (PAE), 2016 WL 3455383, at *2 (S.D.N.Y. June 20, 2016). These factors include:

4

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation marks and citation omitted); *see also Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 413 (2d Cir. 2019) (referring to the *Wolinksy* factors examined as part of a district court's fairness review under *Cheeks*).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing *Cheeks*, 796 F.3d at 206); *see also* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). In the present case, attorneys' fees and costs arise in the context of a settlement incorporating attorneys' fees and costs into the settlement amount. *See, e.g., Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181-82 (S.D.N.Y. 2015) (reviewing FLSA settlement incorporating counsel's fees as part of the total settlement amount).

## DISCUSSION

### I. Range of Recovery

The PSA provides for a recovery of $88,750.00 for Plaintiff Cisneros, and $68,750.00 for Plaintiff Garza. (*Cheeks* Letter at 2.) Plaintiffs' counsel will receive costs and fees of approximately $8,750 from each settlement amount, amounting to approximately 10% of the proceeds of the Cisneros Settlement, and 13% of the Garza Settlement. (*Id.* at 3.) After attorneys' fees and costs, Cisneros will receive $80,000.00, and Garza will receive $60,000.00. (*Id.* at 2.)

Plaintiffs estimate that if Cisneros were to prevail at trial, his estimated damages "would be approximately $125,000," and that if Garza were to prevail at trial, his estimated damages "would be approximately $115,000," both numbers being inclusive of liquidated damages and interest. (*Id.* at 2.) Given these assumptions, the Plaintiffs' recoveries – at approximately 70% for Cisneros, and 60% for Garza – are reasonable. *See Khan v. Young Adult Inst., Inc.*, No. 18-CV-2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) (collecting cases of reasonable FLSA settlements ranging from 25% to 40% of plaintiff's maximum recovery). Nonetheless, the Parties' submissions are deficient, and preclude final settlement approval, because they fail to provide evidence supporting Plaintiffs' assertions. *Picorelli v. Watermark Contractors Inc.*, No. 21-CV-2433 (KMK), 2022 WL 2386761,

6

at *3 (S.D.N.Y. July 1, 2022) ("The possibility of Plaintiff facing evidentiary and legal battles cannot justify the Court's approval of the Settlement Amount as fair and reasonable without any documentation supporting the Settlement Amount or the total possible recovery amount."). Thus, "the Court will not approve the PSA without additional information regarding the underlying data and methodology that were used to generate the Settlement Amount." *Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782 (KMK), 2021 WL 1964724, at *4 (S.D.N.Y. May 17, 2021); *see also Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("the parties did not submit the underlying data to which the methodology [used to generate the settlement amount] was applied . . . the parties must submit this information to the Court before the Court can approve the settlement"). The Parties are therefore instructed to submit to the Court a more detailed explanation of how they arrived at the calculations of the Plaintiffs' estimated damages.

Notwithstanding the Court's request for further supporting information on the calculation of estimated damages, the Court finds that the remaining factors weigh in favor of settlement approval. The Court is satisfied that the PSA was negotiated competently, in good faith, and at arm's length, and that there is no evidence of fraud or collusion. (*See Cheeks* Letter at 3 (noting that the settlement was negotiated "between counsel who are well

7

versed in the prosecution and defense of wage and hour actions" and was the product of a "full-day mediation session before an experienced mediator").) Furthermore, although the Complaint refers to the presence of similarly situated individuals, (*see* Compl. ¶¶ 41-53 (collective action claims)), none of these individuals is a party to this lawsuit, and Plaintiffs will be the only employees affected by the settlement and dismissal of the lawsuit. *See Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816 (PAE), 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (noting that no other employee came forward and that the plaintiff would "be the only employee affected by the settlement and dismissal," and that these facts supported approval of the proposed settlement). Accordingly, the Court finds that the remaining factors weigh in favor of approval of the settlement amount in the instant case.

**II. Attorneys' Fees**

Because the Parties' motion for settlement approval requires denial without prejudice at this time, Plaintiffs' counsel should not be awarded attorneys' fees at this time. *See Fisher*, 948 F.3d at 600 ("Under the FLSA and the NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs"). However, even if sufficient information had been provided regarding the range of recovery, Plaintiffs' counsel's request for attorneys' fees would be denied, again without prejudice, for failing to provide adequate documentation supporting the requested fees.

8

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted). When considering applications for attorneys' fees, courts in this circuit employ the lodestar method. *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21-CV-3284 (ENV)(LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022). The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case . . . creates a presumptively reasonable fee." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks and citation omitted).

Courts may also employ the "percentage of the fund" method which permits attorneys to recover a percentage of the settlement amount via a previously determined contingency fee agreement. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417-19 (2d Cir. 2010). Courts in this Circuit routinely approve of one-third or below contingency fees for FLSA cases. *Lai v. Journey Preparatroy Sch., Inc.*, No. 19-CV-2970 (CLP), 2022 WL 3327824, at *3 (E.D.N.Y. May 26, 2022) ("With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable"); *Kazadavenko*, 2022 WL 2467541 at *4 (collecting cases). However, even where fees are reasonable when analyzed under the percentage method, courts will additionally

9

perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, 17-CV-9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted).

Critically, "[t]he fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600; *Wolinsky*, 900 F. Supp. 2d at 336 ("In the Second Circuit, that entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done"). "[E]ven when the proposed fees do not exceed one third of the total settlement amount, courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Navarro Zavala v. Trece Corp.*, No. 18-CV-1382 (ER), 2020 WL 728802, at *2 (S.D.N.Y. Feb. 13, 2020) (quotation and citation omitted).

Here, Plaintiffs' counsel requests fees of $17,500 (or approximately 11%) out of the $157,500 settlement for both Plaintiffs. (*Cheeks* Letter at 3.) The Parties' *Cheeks* Letter correctly notes that this percentage fee is "considerably less than what is routinely approved by courts in this district," but fails to offer any supporting documentation to allow the Court to ensure the reasonableness of the attorneys' fees. Without supporting evidence – contemporaneous billing records and documentation for costs requested – the Court cannot determine

10

whether the attorneys' fee request is commensurate with the amount of time spent on this case and is therefore reasonable. Plaintiffs' counsel's failure to provide this documentation necessarily warrants denial of the fee application without prejudice. *See, e.g., Fontana v. Bowls & Salads Mexican Grill Inc.*, No. 19-CV-1587 (JMA)(ARL), 2022 WL 3362181, at *8 (E.D.N.Y. Feb. 3, 2022), *report and recommendation adopted*, 2022 WL 2389298 (E.D.N.Y. July 1, 2022) ("Plaintiff has failed to provide contemporaneous billing records for attorneys involved, or even a list of attorneys involved and their billing rates . . . Accordingly, Plaintiff has failed to meet her burden of establishing the reasonableness of the fees requested"); *Lopez*, 96 F. Supp. 3d at 182 (denying application for attorneys' fees where plaintiff's counsel provided no contemporaneous billing record evidence); *Mamani v. Licetti*, No. 13-CV-7002 (KMW) (JCF), 2014 WL 2971050, at *3 (S.D.N.Y. July 2, 2014) ("The parties . . . do not provide the Court with any information to aid the Court in assessing the reasonableness of the fee award. Accordingly, the Court cannot approve the Settlement Agreement's allocation of attorney's fees at this time").

**III. Other Provisions**

The Court finds all other provisions of the PSA to be fair and reasonable, as it includes no objectionable releases or non-disparagement or confidentiality provisions. *See Doe v. Solera*

11

*Capital LLC*, No. 18-CV-1769 (ER), 2021 WL 568806, at *1 (S.D.N.Y. Jan. 20, 2021). With respect to the parties' obligations under the agreement, the release appropriately discharges only claims and causes of action which have occurred as of the date that the parties executed the agreement, relating specifically and solely to the allegations that were raised or could have been raised in this action. (PSA ¶ 2); *see Solera Capital LLC*, 2021 WL 568806, at *1 ("factors that preclude approval include the presence of an overly broad release that waives claims beyond those related to wage-and-hour issues"); *Lopez*, 96 F. Supp. 3d at 181 (finding that courts typically reject broad releases that "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues").

The Settlement Agreement also contains a mutual non-disparagement clause. (PSA ¶ 7). The clause defines disparagement as "any critical, derogatory, disparaging, defamatory or untruthful statement or remarks about each other to any member of the press or other media or on the internet via a blog post or comment, vlog, video, any online conversation, and on any social media sites or applications . . . ." (*Id.*) The PSA makes it clear that neither party shall be precluded "from making truthful statements of the underlying facts and circumstances of any claims in this action, or truthful statements regarding his experiences

12

in the Action." (*Id.*)  "Given that the clause is a mutual one, and . . . include[s] a carve-out for truthful statements related to plaintiff's wage and hour claims, the Court finds that the clause is not objectionable." *Glover v. Triumph Constr. Corp.*, No. 18-CV-6763 (CLP), 2021 WL 7906504, at *3 (E.D.N.Y. July 12, 2021).

## CONCLUSION

For the foregoing reasons, the Parties' request for approval of their Proposed Settlement Agreement is denied without prejudice.  The Parties may reapply for approval of the settlement by submitting a letter that complies with the Court's determinations in this Order no later than **October 25, 2024.**

**SO ORDERED**

Dated:   October 11, 2024
         Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York