```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X

EDDY O. CISNEROS and DANIEL J.
GARZA, on behalf of themselves and
other similarly situated                    MEMORANDUM AND ORDER
individuals,                                23-cv-1409(KAM)(VMS)

                Plaintiffs,

     - against -

BORENSTEIN CATERERS, INC. and GILAD
HACHMON,

                Defendants.

-----------------------------------X
```
**KIYO A. MATSUMOTO, United States District Judge:**

Plaintiffs Eddy Cisneros ("Cisneros") and Daniel Garza ("Garza," and together, "Plaintiffs") brought this action against their former employer Borenstein Caterers, Inc. ("Borenstein") and its chief executive officer, Gilad Hachmon ("Hachmon," and together "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and Section 142-2.2 of Title 12 of New York Codes, Rules, and Regulations ("NYCRR"). The parties now write jointly pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d. Cir. 2015), seeking approval of the parties' proposed settlement. (ECF No. 28, "Supp. Letter"; ECF No. 25-1, Cisneros Settlement Agreement; ECF No. 25-2, Garza Settlement Agreement (both agreements together referred to herein as the "Proposed Settlement Agreement" or "PSA").) They had

previously submitted a motion for settlement approval (ECF No. 25, "Initial Letter"), which this Court denied without prejudice for failure to provide sufficient information and documentation (ECF No. 27, Memorandum and Order Denying Initial Motion).

In light of the additional information and documentation provided in the parties' Supplemental Letter, the Court now **GRANTS** the renewed motion for approval of the Proposed Settlement Agreement. The Clerk of Court is accordingly directed to close this case, dismissing all claims asserted in the instant action in return for payment of the settlement amount by Defendants.

The Court will retain jurisdiction to enforce the PSA. *See Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (noting district court may retain jurisdiction to enforce by "expressly retain[ing] jurisdiction over the settlement agreement") (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)); *see also In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 134 (2d Cir. 2011) ("where, in a federal court, the court makes 'the parties' obligation to comply with the terms of the settlement agreement . . . part of the order of dismissal—either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order'— the proper forum for litigating a breach is that same federal court" (quoting *Kokkonen*, 511 U.S. at 381)).

**BACKGROUND**

The Court assumes the reader's familiarity with the background of this matter as set forth in this Court's Memorandum and Order dated October 11, 2024, denying without prejudice the parties' prior motion for settlement approval (ECF No. 27), and will discuss background information only insofar as it has bearing on the instant motion. The October 11, 2024 Memorandum and Order concluded that the proposed settlement could not be finally approved until the parties provided additional information concerning Plaintiffs' possible range of recovery and provided evidence to support Plaintiffs' requested attorneys' fees. (*Id.* at 2, 7, 10-11.)

In their October 25, 2024 Supplemental Letter, the parties now provide calculations of damages based on "Defendants' undisputed time records and paychecks for Plaintiffs," and now calculate the "maximum potential damages that Plaintiffs could recover, if they were to prevail at trial." (Supp. Letter at 1 & Exhibit ("Ex.") A.) Based on these calculations, the parties estimate that if Cisneros were to prevail at trial, he could recover at most $125,627.80, and if Garza were to prevail at trial, he could recover at most $75,983.81, both figures being exclusive of any attorneys' fees. (*Id.*) Plaintiffs' counsel also submits billing records documenting his work for this matter, which show a total of 46.1 hours worked and retainer agreements showing an

3

agreed-on hourly rate of $400 per hour (*id.* Exs. C & D). In total, the hours documented in Plaintiffs' counsel's billing records multiplied by the agreed-on fee amount to $18,440, and Plaintiffs' counsel claims additional costs in the amount of $1,550.70, yielding a total of $19,990.70.  (*Id.* Exs. B & C.)

## LEGAL STANDARD

The Federal Rules of Civil Procedure afford litigants wide latitude in settling their disputes. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii) (noting that "the plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared"). An exception to this rule exists for stipulated dismissals of FLSA actions. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Parties may not stipulate to dismiss an FLSA action without submitting the proposed settlement to the district court for review and approval. *Id.*

District courts in this circuit frequently look to the factors outlined in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), to determine the reasonableness of a proposed settlement. *See, e.g., Li Rong Gao v. Perfect Team Corp.*, 249 F. Supp. 3d 636, 638 (E.D.N.Y. 2017); *Cortes v. New Creators, Inc.*, No. 15-cv-5680 (PAE), 2016 WL 3455383, at *2 (S.D.N.Y. June 20, 2016). These factors include:

> (1) the plaintiff's range of possible

4

>  recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation marks omitted) (quoting *Medley v. Am. Cancer Soc'y*, No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)) (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 54 (E.D.N.Y. 2010)); *see also Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 413 (2d Cir. 2019) (referring to the *Wolinksy* factors examined as part of a district court's fairness review under *Cheeks*).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing *Cheeks*, 796 F.3d at 206); *see also* 29 U.S.C. § 216(b) ("The court in [an FLSA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). In the present case, attorneys' fees and costs arise in the context of a settlement incorporating attorneys' fees and costs into the settlement amount. *See, e.g., Lopez v.*

5

*Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181-82 (S.D.N.Y. 2015) (reviewing FLSA settlement incorporating counsel's fees as part of the total settlement amount).

## DISCUSSION

### I. Range of Recovery

The Proposed Settlement Agreement provides for a recovery of $88,750 for Cisneros (the "Cisneros Settlement") and $68,750 for Garza (the "Garza Settlement"). (Supp. Letter at 2.) Plaintiffs' counsel will receive costs and fees of $8,750 from each settlement, amounting to approximately 10% of the proceeds of Cisneros's recovery and approximately 13% of Garza's recovery. (*Id.*) Thus, after attorneys' costs and fees, Cisneros will receive $80,000 and Garza will receive $60,000. (*Id.*)[1]

Plaintiffs previously estimated that if they were to prevail at trial, Cisneros's "estimated damages would be approximately $125,000, and that if Garza prevailed at trial, his estimated damages would be approximately $115,000," both figures inclusive of liquidated damages and interest but exclusive of attorneys' fees. (Initial Letter at 2.) In their Supplemental Letter, however, the parties offer Defendants' calculation of "the

---

[1] "Courts evaluate the fairness of a plaintiff's recovery *after* deducting attorneys' fees and costs." *Perez v. Ultra Shine Car Wash, Inc.*, No. 20-cv-782 (KMK), 2021 WL 1964724, at *3 n.5 (S.D.N.Y. May 17, 2021) (citing *Arango v. Scotts Co., LLC*, No. 17-cv-7174 (KMK), 2020 WL 5898956, at *3 (S.D.N.Y. Oct. 5, 2020); *Zorn-Hill v. A2B Taxi LLC*, No. 19-cv-1058 (KMK), 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020); *Garcia v. Cloister Apt Corp.*, No. 16-cv-5542 (HBP), 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019)).

6

maximum potential damages" the Plaintiffs could recover, summing individual estimates for unpaid wages, liquidated damages from unpaid wages, $10,000 in statutory damages for the alleged wage statement and payroll notice violations, and prejudgment interest before concluding that Cisneros "may be entitled" to "a grand total of $125,627.80, exclusive of attorneys' fees," and Garza "may be entitled" to "a grand total of $75,983.81, exclusive of attorneys' fees." (Supp. Letter at 1-2.)[2]

Given those calculations, Cisneros would receive $80,000 out of his maximum calculated recovery of $125,627.80, or approximately 64%; and Garza would receive $60,000 out of his maximum calculated recovery of $75,983.81, or approximately 79%. These percentages are reasonable. *See Khan v. Young Adult Inst., Inc.*, No. 18-cv-2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) (collecting cases of reasonable FLSA settlements ranging from 25% to 40% of plaintiff's maximum recovery).[3]

---

[2] The parties' calculated maximum recovery for Cisneros in their Supplemental Letter is similar to Plaintiffs' estimated damages as stated in their Initial Letter, but their estimate for Garza's maximum recovery has been reduced by approximately $40,000 when compared to Plaintiffs' estimated damages as stated in their Initial Letter of approximately $115,000. Although this change is not specifically addressed in the parties' Supplemental Letter, the Court understands the change to be the result of using "Defendants' undisputed time records and paychecks for Plaintiffs."

[3] The parties have now provided sufficient evidence supporting their assertions in the form of weekly hours and rates for each Plaintiff. (Supp. Letter Ex. A.) The Court notes that the calculations submitted by the parties do not include Plaintiffs' potential recovery for Defendants' failure to pay spread-of-hours pay, as alleged in the Complaint (ECF No. 1, Compl., ¶¶ 1(ii), 2-4, 85 (alleging Plaintiffs are entitled to unpaid "spread of hour" wages for days in which they worked in excess of ten hours).) Neither does the information submitted by the parties permit the Court to independently and accurately

7

The Court also finds, as it did in its October 11, 2024 Memorandum and Order, that the remaining *Wolinsky* factors weigh in favor of settlement approval. The Court is satisfied that the PSA was negotiated competently, in good faith, and at arm's length, and that there is no evidence of fraud or collusion. (See Initial Letter at 3 (noting that the settlement was negotiated "between counsel who are well versed in the prosecution and defense of wage and hour actions" and was the product of a "full-day mediation session before an experience mediator").) Furthermore, although the Complaint refers to the presence of similarly situated individuals, (*see* Compl. ¶¶ 41-53 (collective action claims)), none of these individuals is a party to this lawsuit, and Plaintiffs will be the only employees affected by the settlement and dismissal of the lawsuit. *See Escobar v. Fresno Gourmet Deli Corp.*, No. 16-cv-6816 (PAE), 2016 WL 7048714, at *3 (S.D.N.Y. Dec.

---

estimate spread-of-hours pay to which Plaintiffs might be entitled, which would require a determination of which days each Plaintiff worked hours during an interval exceeding ten hours, and for each such day, adding one additional hour of pay at the applicable basic minimum hourly rate. *See* 12 NYCRR § 146-1.6(a). The information submitted by the parties requires the conclusion that Cisneros worked hours during an interval exceeding ten hours (*see* Supp. Letter Ex. A at 1 (Cisneros worked 75.2 hours for week ending Feb. 3, 2018)), and suggests that Garza did as well (*id.* at 6 (Garza worked 61.62 hours for week ending Sept. 9, 2018)). The Court estimates the maximum additional damages that Plaintiffs might be entitled to for spread-of-hours pay as approximately $29,000, calculated by adding $15 (the minimum hourly rate for large employers within New York City for the majority of the period in which damages are calculated) for every day in the period in which damages are calculated. This in turn would lead to adjusted maximum recoveries of approximately $155,000 for Cisneros and $106,000 for Garza, meaning that under the PSA, Cisneros would recover approximately 52% of his adjusted maximum recovery and Garza would recover approximately 56% of his adjusted maximum recovery. Even considering the possibility of these adjusted maximum recoveries, Plaintiffs' recoveries would be reasonable.

2, 2016) (noting that no other employee came forward and that the plaintiff would "be the only employee affected by the settlement and dismissal," and that these facts supported approval of the proposed settlement). Accordingly, the Court finds that the remaining factors weigh in favor of approval of the settlement amount in the instant case.

**II. Attorneys' Fees**

In light of the billing records provided in support of the parties' Supplemental Letter, the Court finds the requested attorneys' fees and costs of $17,500 to be reasonable.

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229-30 (S.D.N.Y. 2016) (citing *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-cv-112 (PAE), 2015 WL 7736551, at *2 (S.D.N.Y. Nov. 30, 2015)). When considering applications for attorneys' fees, courts in this circuit employ the lodestar method. *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21-cv-3284 (ENV) (LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022). The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case . . . creates a presumptively reasonable fee." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks and citations omitted).

Courts may also employ the "percentage of the fund"

9

method which permits attorneys to recover a percentage of the settlement amount via a previously determined contingency fee agreement. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417-19 (2d Cir. 2010). Courts in this Circuit routinely approve of one-third or below contingency fees for FLSA cases. *Lai v. Journey Preparatroy Sch., Inc.*, No. 19-cv-2970 (CLP), 2022 WL 3327824, at *3 (E.D.N.Y. May 26, 2022) ("With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable" (citations omitted)); *Kazadavenko*, 2022 WL 2467541 at *4 (collecting cases). Even where fees are reasonable when analyzed under the percentage method, however, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, 17-cv-9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted).

Critically, "[t]he fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600; *Wolinsky*, 900 F. Supp. 2d at 336 ("In the Second Circuit, that entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done"). "[E]ven when the proposed fees do not exceed one third of the total settlement amount, courts in this circuit use the lodestar method as a cross

10

check to ensure the reasonableness of attorneys' fees." *Navarro Zavala v. Trece Corp.*, No. 18-cv-1382 (ER), 2020 WL 728802, at *2 (S.D.N.Y. Feb. 13, 2020) (citation omitted).

Here, Plaintiffs' counsel affirms that he expended 46.1 hours and requests attorneys' fees of $17,500. (Supp. Letter at 2 & Exs. B & C.) His affirmation is supported by billing records documenting the time that Plaintiffs' counsel spent working on this matter including work spent on particular tasks such as emailing and consulting with his clients, drafting and revising the complaint, and successfully mediating Plaintiffs' claims. (*Id.* Ex. C.) The requested attorneys' fees amount to approximately 11% of the total settlement amount, and amount to less than the product of the total hours expended and counsel's agreed-on hourly fee of $400. The Court has reviewed the records provided by counsel and given the facts and circumstances of this case, finds the requested attorneys' fee award of $17,500 of the overall settlement to be reasonable and comparable with other FLSA attorney's fee awards in this Circuit. *See Pucciarelli v. Lakeview Cars, Inc.*, No. 16-cv-4751 (RRM) (RER), 2017 WL 2778029, at *2 (E.D.N.Y. June 26, 2017).

A lodestar cross check confirms the reasonableness of the requested attorneys' fees. The attorneys' fees provided by the PSA yield an implied hourly rate of approximately $380 per hour ($17,500 over 46.1 hours), putting Plaintiffs' counsel's

11

hourly rate well within the range of rates that courts in this District have previously determined to be reasonable for wage and hour cases. *See id.* (noting recent decisions in this District "have determined that reasonable hourly rates in FLSA cases are approximately $300-$450 for partners") (citing *Romero v. Westbury Jeep Chrysler Dodge, Inc.*, No. 15-cv-4145 (ADS) (SIL), 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016). An implied rate of $380 per hour is also reasonable in light of Plaintiffs' counsel's 40 years of legal experience and other estimable qualifications. (Supp. Letter Ex. B.)

### III. Other Provisions

As it noted in its October 11, 2024 Memorandum and Order, the Court finds all other provisions of the PSA to be fair and reasonable, as the PSA includes no objectionable releases, non-disparagement, or confidentiality provisions. *See Doe v. Solera Capital LLC*, No. 18-cv-1769 (ER), 2021 WL 568806, at *1 (S.D.N.Y. Jan. 20, 2021). With respect to the parties' obligations under the PSA, the release appropriately discharges only claims and causes of action which have occurred as of the date that the parties executed the agreement, relating specifically and solely to the allegations that were raised or could have been raised in this action. (PSA ¶ 2); *see Solera Capital LLC*, 2021 WL 568806, at *1 ("factors that preclude approval include the presence of an overly broad release that waives claims beyond those related to

12

wage-and-hour issues"); *Lopez*, 96 F. Supp. 3d at 181 (finding that courts typically reject broad releases that "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues").

The PSA also contains a mutual non-disparagement clause. (PSA ¶ 7). The clause defines disparagement as "any critical, derogatory, disparaging, defamatory or untruthful statement or remarks about each other to any member of the press or other media or on the internet via a blog post or comment, vlog, video, any online conversation, and on any social media sites or applications." (*Id.*) The PSA makes it clear that neither party shall be precluded "from making truthful statements of the underlying facts and circumstances of any claims in this action, or truthful statements regarding his experiences in the Action." (*Id.*) "Given that the clause is a mutual one, and . . . include[s] a carve-out for truthful statements related to [P]laintiff[s'] wage and hour claims, the Court finds that the clause is not objectionable." *Glover v. Triumph Constr. Corp.*, No. 18-cv-6763 (CLP), 2021 WL 7906504, at *3 (E.D.N.Y. July 12, 2021).

## CONCLUSION

For the foregoing reasons, the Court approves the parties' Proposed Settlement Agreement. Now that the PSA has been approved, the parties' obligations are in effect. The Court

13

retains jurisdiction to enforce the Settlement Agreement. Should any party seek to enforce another's obligations under the Settlement Agreement, it may move to enforce the terms of the Settlement Agreement, as incorporated herein.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED**

Dated:   December 30, 2024
         Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York